UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY CHINN,

    Petitioner,                                  CASE NUMBER: 04-CV-10321-BC

v.

                                               DISTRICT JUDGE DAVID M. LAWSON

PAUL RENICO,                            MAGISTRATE JUDGE CHARLES BINDER

    Respondent.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PETITION FOR WRIT OF HABEAS CORPUS**

**I.    RECOMMENDATION**

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus be **DENIED**.

**II.    REPORT**

    **A.    Introduction**

Pending, pursuant to an order of reference issued November 28, 2005, by U.S. District Judge David M. Lawson (Dkt.22), is the instant petition filed December 6, 2004.  (Dkt. 3.) Petitioner Anthony Chinn, a Michigan state prisoner currently confined at the St. Louis Correctional Facility in St. Louis, Michigan, filed a Petition for Writ of Habeas Corpus.  The petition raises one claim challenging Petitioner's 2002 state court convictions.  Respondent filed a response to the petition on February 10, 2005 (Dkt. 8), and the Rule 5 materials were received on March 3, 2005.  (Dkts. 10-21.)  Petitioner did not file a reply.  Pursuant to E.D. Mich. LR 7.1(e)(2), the petition is ready for Report and Recommendation without oral argument.

B.  **Factual Background**

The Michigan Court of Appeals' opinion summarized the facts as follows:

> On April 14, 2000, officers from the Detroit Police Department conducted a raid, pursuant to a search warrant, at a home located on Seyburn Street in Detroit. After forcing entry into the home and failing to find anyone on the main floor, officers proceeded to the basement. In the basement, which defendant was using as a bedroom, the officers found defendant alone. Several weapons were recovered in and around the bed located in the basement. In addition, on a dresser top located within an arms reach of the bed, a plastic baggie containing a cocaine-like substance was found. The substance weighed 9.43 grams and was later positively identified as containing cocaine. In the refrigerator of the home's kitchen located on the main floor of the house, a brown paper bag containing three, knotted plastic baggies of a powdery substance was also found. The substance weighed 70.82 grams and was later positively identified as containing cocaine. It had an estimated worth of $1,500 to $2,000.
>
> Another man resided, and was found, on the upper level of the home. No firearms or narcotics were seized in the vicinity of this other man and nothing was confiscated from the upstairs. The man was not arrested. Defendant was arrested and charged with the crimes for which he was convicted.

(Rule 5 Mat., Dkt. 20, *Mich. v. Chinn*, No. 242765 at 1 (Mich. Ct. App. December 9, 2003).)

C.  **Procedural History**

Petitioner was charged with possession with intent to deliver cocaine, 50 grams or more but less than 225 grams in violation of M.C.L. 333.7401(2)(a)(iii), felon in possession of a firearm in violation of M.C.L. 750.224f, and possession of a firearm during the commission of a felony in violation of M.C.L. 750.227b. Following a jury trial, on March 20, 2002, Petitioner was convicted of all counts. On April 12, 2002, Petitioner was sentenced to 10-20 years on the cocaine conviction, 2 years on the felon in possession of a firearm conviction, and 40-60 months on the possession of a firearm during the commission of a felony conviction.

On July 23, 2002, Petitioner filed, through counsel, an appeal of right with the Michigan Court of Appeals, raising the following claims:

    I.    SHOULD DEFENDANT-APPELLANT'S CONVICTION FOR POSSESSION WITH INTENT TO DELIVER OVER FIFTY GRAMS BE REVERSED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO FIND FOR THIS OFFENSE?

    II.    SHOULD DEFENDANT-APPELLANT'S CONVICTIONS BE REVERSED BECAUSE THE TRIAL COURT IMPROPERLY FOUND THE STATEMENT OF DEFENDANT TO BE VOLUNTARY?

(Rule 5 Mat., Dkt. 20, Appellant's Br. on Appeal at 1.)  On December 9, 2003, the Court of Appeals for the State of Michigan affirmed in a four-page unpublished opinion.

Petitioner thereafter filed an Application for Leave to Appeal with the Michigan Supreme Court, raising the following issues:

    I.    SHOULD DEFENDANT-APPELLANT'S CONVICTION FOR POSSESSION WITH INTENT TO DELIVER OVER FIFTY GRAMS BE REVERSED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO FIND FOR THIS OFFENSE?

    II.    SHOULD DEFENDANT-APPELLANT'S CONVICTIONS BE REVERSED BECAUSE THE TRIAL COURT IMPROPERLY FOUND THE STATEMENT OF DEFENDANT TO BE VOLUNTARY?

(Rule 5 Mat., Dkt. 21, Pro Per Application for Leave to Appeal filed 1/30/04.)

On June 30, 2004, the Michigan Supreme Court denied leave to appeal, because the Court was "not persuaded that the questions presented should be reviewed." (Rule 5 Mat., Dkt. 21, *Mich. v. Chinn*, No. 125536 (Mich. S. Ct. June 30, 2004).)  The instant Petition for Writ of Habeas Corpus followed, raising the following ground for relief:

    I.    WHETHER, THE STATE COURT FINDING OF PETITIONER'S CONFESSION STATEMENT TO POLICE, TO BE VOLUNTARY AND ADMISSIBLE, WAS CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW AS DETERMINED BY THE UNITED STATES SUPREME COURT, WHICH VIOLATES PETITIONER'S 5TH AMENDMENT RIGHTS OF THE U.S. CONSTITUTION?

(Pet., Dkt. 3, Mem. of Law in Supp. at 4.)

Respondent contends that the petition should be denied because Petitioner has failed to show clear and convincing evidence to rebut the presumption that the state court's factual conclusions regarding voluntariness and lack of coercive police activity are correct, citing 28 U.S.C. 2254(e)(1).

**D.     Law and Analysis**

**1.     Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), govern this case because Petitioner filed his habeas petition after the effective date of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997).

The AEDPA altered the standard of review that a federal court must use when reviewing applications for the writ of habeas corpus. *See Felker v. Turpin*, 518 U.S. 651, 116 S. Ct. 2333, 2335, 135 L. Ed. 2d 827 (1996), *reh'g denied,* 518 U.S. 1047, 117 S. Ct. 25, 135 L. Ed. 2d 1119 (1996); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112, 118 S. Ct. 1044, 140 L. Ed. 2d 109 (1998). The current standard of review provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), the Court held that a state court decision is "contrary to" Supreme Court precedent "if the state court arrives

4

at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Id.* at 1519. Additionally, a state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or if the state court either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 1520. The reasonableness of the state court's opinion is judged by an objective rather than subjective standard. *See Id.* at 1521-22.

Pursuant to the AEDPA, this Court must presume that state court factual determinations are correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998); *see also* 28 U.S.C. § 2254(e)(1).

**2.     Habeas Claim  - Fifth Amendment**

Petitioner's claim is that his confession was involuntary and thus, its admission violated his Fifth Amendment right against compelled self-incrimination. Petitioner specifically asserts that he was coerced into making the confession because the police promised him that if he signed the confession and cooperated, he would be released and not charged. Petitioner was taken to the police station, but was not booked. Instead, Petitioner was released and was arrested at a later date.

**a.     State Court Record**

This claim was presented to the Michigan Court of Appeals in Petitioner's direct appeal. The Court of Appeals found Petitioner's claim that his confession was involuntary to be without

merit. (Rule 5 Mat., Dkt. 20, *Mich. v. Chinn*, No. 242765 (Mich. Ct. App. December 9, 2003) (unpublished).) The Michigan Court of Appeals stated the following:

> Defendant also argues that his statement to the police was not voluntary and should have been suppressed. We disagree. 'When reviewing a trial court's determination of the voluntariness of inculpatory statements, this Court must examine the entire record and make an independent determination...' *People v. Shipley*, 256 Mich. App. 367, 372; 662 N.W.2d 856 (2003). But the trial court's factual findings will not be disturbed absent clear error, and deference is given to the trial court's assessment of the weight of the evidence and credibility of witnesses. *Id.* at 372-373, *citing People v. Sexton (After Remand),* 461 Mich. 746, 752; 609 N.W.2d 822 (2000).
>
> Voluntariness is determined by examining the totality of all the circumstances surrounding a statement to determine if it was 'the product of an essentially free and unconstrained choice by its maker.' *People v. Cipriano*, 431 Mich. 315, 333-334; 429 N.W.2d 781 (1988). The list of factors include
>
>> the age of the accused; the lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.[*Id.* at 334 (citations omitted)]
>
> A promise of leniency is also a factor to consider. *Shipley, supra* at 373. The absence or presence of any one factor is not conclusive on the issue of voluntariness. *Cipriano, supra.* 'The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made.' *Id.*
>
> The record demonstrates that defendant was educated and intelligent. He completed high school and two years of college. He was thoroughly advised of his constitutional rights. He read them out loud without difficulty, and indicated that he understood them. In addition, defendant had previous experience with the police, and, at the *Walker* hearing, testified that he knew he had the right to remain silent. The interview took place in defendant's kitchen while the home was still being searched and was thirty-five minutes in length. Defendant never indicated that he was hungry, thirsty, or in need of medical attention. In addition, he was not

threatened. On the 'constitutional rights certificate of notification,' Officer McGhee noted that defendant was not high or intoxicated. McGhee testified that he has observed people under the influence of alcohol or controlled substances before and defendant did not appear to be under the influence. Defendant disputed this, however, and testified that he was under the influence of marijuana.

Defendant additionally claimed that he was coerced into making his statement because officers told him that, if he agreed to the statements and assisted the police, he would be released. During the *Walker* hearing, defendant could not identify the officers who allegedly made promises to him. He testified that it was 'probably' Isaac Criers, the officer in charge of the case. He subsequently indicated that McGhee also made the statements. McGhee testified that defendant was not promised leniency in exchange for his statement. Criers testified that McGhee conducted the interview alone. Criers talked to defendant only at the police station after defendant gave his statement. The trial court found there was no coercive conduct and that defendant's statement was voluntary. Reviewing the totality of the circumstances, and giving the deference to the trial court's finding of fact that there was no coercion, we agree that defendant's statement to Officer McGhee was voluntary. The trial court did not err in denying defendant's motion to suppress.

(*Id*. at 2-4 (footnote omitted).)

**b.   Discussion**

Under the AEDPA, habeas relief may be granted if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). For the reasons which follow, I suggest that the State court's finding that no promises of leniency were made was unreasonable under the AEDPA.

Officer McGhee testified that he wrote the questions down, asked them orally, and then wrote Petitioner's answers down and asked Petitioner to initial the answers. (Rule 5 Mat., Ex. 5, *Walker* hearing Tr. at 12-14.) After this interview in Petitioner's kitchen, Petitioner was taken to the police station but was not booked. (*Id. at 17*.) Instead, Petitioner "was discharged, pending." (*Id*.) Officer McGhee testified further that although it was not his decision, "there was a decision as far as him, as far as obtaining information to get additional narcotics." (*Id*. at 18.) When asked whether this release was done in exchange for leniency, Officer McGhee responded, "[n]o, it was

7

not, because he [Petitioner] was advised this case was not going away." (*Id.* at 18.) Officer McGhee added that there were not any type of inducements offered for Petitioner to be released and work with the officers. (*Id.*) I suggest that this latter testimony borders upon the incredulous. If a decision had been made by the officers to "discharge" Petitioner, "pending," I cannot conceive upon what basis this decision was made if it did not involve some kind of exchange of information about narcotics trafficking.

On the other hand, Petitioner testified that he was told that "if I agreed to sign those statements and assist in some way, that I would be released, " i.e., that "[t]hey would let me go." (Rule 5 Mat., Dkt. 16, Jury Trial Tr. dated 3/18/02, *Walker* hearing at 22, 23.) *Accord Walker* hearing Tr. at 26 ("If I signed those papers, I'll be let go . . . If I sign those papers and I assist them, I'll be let go."). Petitioner indicated that he was fingerprinted at the station and then "they let me go out the front door." (*Id.* at 23.)

Officer Criers's testimony seems to support Petitioner's version of the facts. Officer Criers testified that "the conversation was in regards to Mr. Chinn cooperating, in which case if he did, the charges would not be brought, although we would type up the paperwork. However, if he did not or if he failed to do what he had agreed to do, then we would file the warrant." (*Id.* at 33.) When asked by the prosecutor why it is "important not to put those kinds of conversations in the police reports," Officer Criers responded, "jeopardy in terms of Mr. Chinn, if he wanted to cooperate." (*Id.*)

The Michigan Court of Appeals focused on the fact that Petitioner could not specifically identify which police officer promised leniency and that Officer McGhee denied making any such promises. Moreover, instead of considering the substance of Officer Criers's testimony, the Michigan Court of Appeals discounted it because it found that Officer Criers only spoke with

8

Petitioner after he had given his statement. However, as the Court of Appeals noted, Officer Criers was in charge of the investigation so his testimony regarding the plan to offer Petitioner leniency in exchange for his cooperation is relevant to determining what officers under his charge actually did. Officer McGhee's testimony that "there was decision as far as him, as far as obtaining information to get additional narcotics," (*id*. at 18), also supports the idea that Criers told his subordinates to tell Petitioner he would be treated leniently, released, and ultimately never charged, if he would cooperate and point the officers to other narcotics offenders. The alternative, that Petitioner was not made any promises, simply does not comport with either the officers' or the Petitioner's testimony. As a result, I suggest that the state court's factual conclusions are unreasonable and could support habeas relief.

Under the AEDPA, a state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Williams v. Taylor,* 529 U.S. at 1519. Supreme Court precedent on the precise question of whether promises of leniency render a confession involuntary is, however, I suggest, neither recent nor conclusive.

In *Brady v. United States*, the Court stated that "[t]o be admissible, a confession must be 'free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.'" *Brady v. U.S.*, 397 U.S. 742, 753, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)(finding plea voluntary where counsel present in spite of promise of lesser maximum penalty), *quoting Bram v. United States*, 168 U.S. 532, 542-43, 18 S. Ct. 183, 42 L. Ed. 2d 568 (1897)(finding mild promise of leniency coercive where defendant was without counsel and in custody). Applying that standard

9

to the instant facts, it is arguable that the promise of leniency given to Petitioner without benefit of counsel rendered the confession inadmissible under United States Supreme Court precedent.

More recent Supreme Court precedent is unavailable, and the development of the law on this question has been left to the United States circuit courts. "This Court [Sixth Circuit] has established three requirements for a finding that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003).[1] "A promise of lenient treatment or of immediate release may be so attractive as to render a confession involuntary." *United States v. Wrice*, 954 F.2d 406, 411 (6th Cir. 1992). From previous case law, the sixth circuit has "deduce[d] the rule that promises of leniency may be coercive if they are broken or illusory." *Johnson*, 351 F.3d at 262; *accord United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995)("Material misrepresentations based on unfulfillable or other improper promises might perhaps overbear a defendant's will"). The promise of leniency must rise to the level of an "irresistible inducement" to render a confession involuntary. *Wright*, 954 F.2d at 411. "Statements to the effect that it would be to a suspect's benefit to cooperate are not improperly coercive." *Ruggles*, 70 F.3d at 265. "'A confession is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials.'" *United States v. Bye*, 919 F.2d 6, 9 (2d Cir 1990), *quoting United States v. Guarno*, 819 F.2d 28, 31 (2d Cir. 1987). Promises to inform a prosecutor of a defendant's cooperation do not, standing alone, render a confession involuntary. *United States v. Shears*, 762

---

[1]When it is alleged that a confession was coerced by a promise of leniency, the government bears the burden of proving that the confession was voluntary. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S. Ct. 619, 626, 30 L. Ed. 2d 618 (1972). The state court and sixth circuit decisions appear to flip this burden.

10

F.2d 397, 401-402 (4th Cir. 1985). Nor does the added promise by law enforcement to "request leniency" or the "speculation that cooperation will have a positive effect" render the confession coerced. *United States v. Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988). The "carrot-and-stick approach to eliciting information from an uncooperative suspect" is widely accepted. *Williams v. Withrow*, 944 F.2d 284, 289 (6th Cir. 1991).

Applying this law, I suggest that Petitioner's confession could be considered involuntary under sixth circuit and Supreme Court precedent and could entitle Petitioner to habeas relief. However, I further suggest that admission of the unconstitutional confession was, when viewed in the context of all the evidence presented to the jury, harmless error not requiring habeas relief. At the outset, I note that the circuit courts have diverged on whether the appropriate harmless error standard to be applied to habeas claims should be the standard employed on direct review, i.e., *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)(constitutional errors), or the standard employed on collateral review, i.e., *Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1995), adopting the standard set forth in *Kotteakos v. United States*, 328 U.S. 750, 90 L. Ed.1557, 66 S. Ct. 1239 (1946). The AEDPA did not overrule the *Brecht/Kotteakos* standard but does require federal courts to give some deference to state court adjudications of federal claims. Some circuits have doubted whether *Brecht* survived the AEDPA. *See, e.g., Whitmore v. Kemna*, 213 F.3d 431, 433 (8th Cir. 2000). Others have required a two-step analysis, applying both the *Chapman* and the *Brecht* standards. *See, e.g., Aleman v. Sternes*, 320 F.3d 687, 690-91 (7th Cir. 2003), *but see*, *Easley v. Frey*, 433 F.3d 969, 974 (7th Cir. 2006)(applying *Brecht* only). The second circuit has held that when the state court has applied harmless error analysis to constitutional issues, the *Chapman* standard must be applied but has reserved the question whether *Brecht* may be employed when the state court did not engage in

harmless error analysis. *Gutierrez v. McGinnis*, 389 F.3d 300, 306 (2d Cir. 2004). The sixth circuit has held that *Brecht* has survived the AEDPA and remains the appropriate standard on collateral review:

> We think that when the issue before the federal habeas court is the state court's finding of harmless error, the test set out by the Supreme Court in *Kotteakos* and explicitly reiterated in *Brecht* quite precisely captures Congress's intent as expressed in the AEDPA and, therefore, continues to be applicable. That test is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict,' *Brecht*, 507 U.S. at 637; it is the habeas petitioner's burden to demonstrate that the trial error resulted in 'actual prejudice.' *Id.* If the petitioner is able to make that showing, he will surely have demonstrated that the state court's finding that the error was harmless beyond a reasonable doubt–the *Chapman* standard–was outside the realm of plausible outcomes, and therefore resulted from an unreasonable application of *Chapman*.

*Nevers v. Killinger*, 169 F.3d 352, 371-72 (6th Cir. 1999), *abrogated on other grounds by Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000).

The state courts did not apply any harmless error analysis to the instant case because there was no error found. Accordingly, under the second or sixth circuit precedent, *Brecht* provides the appropriate standard of review.

Under that standard, I suggest that in the instant case, the evidence found in Petitioner's residence was more than sufficient to support the jury verdict. Since the jury could have easily convicted based on the physical evidence found in Petitioner's residence alone, admission of the confession would not have had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Nevers*, 169 F.3d at 371-72, *quoting Brecht*, 507 U.S. at 637. Consequently, I suggest that admission of the confession, even if contrary to Supreme Court precedent, was, nevertheless, harmless error, not justifying the relief requested by Petitioner.

### III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                     s/ *Charles E. Binder*
                                                     CHARLES E. BINDER
Dated: April 10, 2006                         United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet Van Cleve, and served in the traditional manner on Anthony Chinn and Honorable David M. Lawson.

Dated:  April 10, 2006                                      By        s/Mary E. Dobbick
                                                          Secretary to Magistrate Judge Binder